# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY A. LINER,          )  | |
|                             )  | |
|      Plaintiff,             )  | |
|                             )  | |
|   v.                        )  | Case No. 4:11-CV-1339 JCH |
|                             )  | |
| COMMISSIONER OF SOCIAL SECURITY,  ) | |
|                             )  | |
|      Defendant.             )  | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), finding that Plaintiff Kimberly Liner's disability ceased as of July 1, 2007, and that Liner was no longer eligible to receive disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401-433.  Liner filed a Brief in Support of the Complaint. [Doc. 15].  The Commissioner filed a Brief in Support of the Answer.  [Doc. 20].

### I.   Procedural History

The Social Security Administration ("SSA") found that Liner was disabled beginning on January 31, 2003 and awarded her disability insurance benefits for side effects from treatment for Hepatitis C.  During a continuing disability review, the SSA found that Liner's health had improved since the award of benefits in 2003.  (Tr. 94-97.)  At that time, the SSA ceased paying Liner benefits.  (Tr. 95.)  Liner requested a reconsideration of the cessation of benefits, but waived her right to appear before the disability hearing officer.  (Tr. 92.)  The disability hearing officer upheld the cessation of benefits and found that Liner was able to perform sedentary work.

(Tr. 80-91.) Liner requested a hearing by an Administrative Law Judge ("ALJ"), but she waived her right to appear at the hearing. (Tr. 34.) The ALJ issued a decision affirming the cessation of benefits based on the administrative record on September 17, 2009. (Tr. 27-31.) Liner sought review by the Appeals Council. (Tr. 15.) The Appeals Council denied Liner's request for review. (Tr. 2-4.) Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II.   Evidence Before the ALJ

**1.   Medical Records**

Liner received medical treatment once from social worker Ken Barrett at Provident Counseling on January 13, 2006. (Tr. 273-276.) Liner reported that she was employed and currently had prescriptions for Seroquel and Effexor from a Dr. Matthews. (Tr. 270.) Liner also reported that she had suicidal thoughts recently, but not on the date of the visit. (Tr. 273.) Barrett diagnosed Plaintiff with Major Depressive Disorder (recurrent and moderate) and posttraumatic stress disorder. (Tr. 272.) After the initial visit, Liner did not return a follow-up telephone call made by the therapist or return for counseling. (Tr. 273.)

On October 17, 2006, Liner visited Rebecca Wilkins, Physician Assistant, regarding her Hepatitis C. (Tr. 227-28.) Ms. Wilkins prescribed medication for Liner who complained of abdominal pain. (Tr. 228.)

On November 29, 2006, Liner visited Elena Lejano, M.D. for a follow-up visit and to request an anti-depressant. (Tr. 251-252.) Liner reported that her depression is worse in winter, which increases her anxiety and crying. Liner also reported that she was currently taking Xanax. (Tr. 251.) Dr. Lejano diagnosed Liner with Depressive Disorder not elsewhere classified and

anxiety. Dr. Lejano prescribed Alprazolam and Celexa for Liner's depression and discontinued the Xanax. (Tr. 252.)

On January 8, 2007, Liner visited Dr. Lejano for a follow-up visit. (Tr. 248-250.) Liner reported that her depression was improved on the Celexa, but she still had some teariness and crying. (Tr. 248.) Liner also reported that she had only one panic attack since her last visit and she was still in counseling. (Tr. 248.) Liner also reported worsening pain in her left hip, which became shooting pain five days prior to the visit. (Tr. 248.) Dr. Lejano diagnosed Liner with pelvic and thigh joint pain, depressive disorder, and anxiety. (Tr. 249.) Liner's dosage of Celexa was increased, and she received prescriptions for Ibuprofen and Percoset. (Tr. 249.) She was told to continue counseling at Provident. (Tr. 249.)

On February 22, 2007, Liner visited Dr. Lejano. (Tr. 245-247). Liner reported that she had been to the emergency room several times since her last visit due to MRSA, which was resolved. (Tr. 245.) Liner's examination revealed that she was currently in good health generally with no new complaints or problems. (Tr. 246.) Dr. Lejano noted that that flexion and abduction was painful in Liner's left hip. (Tr. 246.) Dr. Lejano diagnosed Liner with cellulitis and abscess of the left breast (location of MRSA), depressive disorder, pelvic and thigh joint pain, and anxiety. (Tr. 246-47). She was prescribed Zoloft to replace the Celexa and her prescriptions for Ibuprofen and Percoset were continued. (Tr. 246).

On April 3, 2007, Liner completed a Continuing Disability Review Report. (Tr. 211-223.) In the report, Liner indicated that she worked from home scheduling appointments since January 2007, but she has been working since 2004 for three hours per day 5 days per week. (Tr. 218.) Liner also indicated that she believed that she was able to work, but with limitations or restrictions. (Tr. 219.) Liner reported that she had difficulty (1) driving or using public

transportation, (2) managing money, (3) standing, (4) lifting objections, (5) using arms, (6) concentrating, (7) remembering, (8) completing tasks, and (9) getting along with people. (Tr. 221-22.) Liner reported she did not have difficulty dressing, bathing, caring for her hair, taking medicine, preparing meals, feeding herself, doing chores, shopping, using hands or fingers, sitting, seeing, hearing, speaking, or understanding and following directions. (Tr. 221-22.)

On April 10, 2007, Liner visited Dr. Lejano for a follow-up visit. (Tr. 241.) Liner reported that she had no complaints, but expressed that the Zoloft had lots of side effects and she wanted to use Effexor instead. (Tr. 241.) Liner also reported that her left hip pain was unchanged. (Tr. 241.). Dr. Lejano discontinued Liner's Zoloft prescription and prescribed Liner Effexor for her depression. (Tr. 240.)

On June 27, 2007, Peter Moran, D.O., completed a Psychiatric Review Technique regarding Liner for the SSA. (Tr. 191-201.) Dr. Moran noted that Liner indicated that she was currently working and had been working since 2004. (Tr. 201.) He also noted that Liner reported that she has no problems with self-care tasks, shopping, or performing household chores. (Tr. 201.) Dr. Moran stated the "objective medical evidence does not support significant limitations" and Liner's "impairments are non-severe." (Tr. 201.) Dr. Moran diagnosed Liner with a history of Bi-polar Disorder and substance abuse and anxiety disorder. (Tr. 194-95, 197.) Dr. Moran indicated that Liner would have mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 199.)

On July 16, 2007, John Diemer, M.D. and Anthony Zoffuto, M.D. completed a Physical Residual Functional Capacity Assessment of Liner for the SSA based on Liner's medical records. (Tr. 186-190.) The doctors determined that Liner could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk at least 2 hours in an 8-hour workday, and push or pull

without limits. (Tr. 187.) The doctors also determined that Liner has no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 188-89-A.) The Physical RFC noted that at the time of the assessment, Liner was not currently receiving treatment for Hepatitis C and that Liner was working full-time with plans to attend school. (Tr. 188.) The doctors opined that the evidence demonstrated that "medical improvement had occurred," therefore benefits were ended. (Tr. 188.)

On July 30, 2007, Liner visited Andrew Scaduto, M.D. with a complaint of abdominal pain, which she described as a severe sharp pain and a dull ache. (Tr. 235.) Liner's laboratory tests showed an abnormal hepatitis panel. (Tr. 237.) Dr. Scaduto gave Liner a prescription for Percocet and she was told to follow-up with a gastrointestinal doctor regarding the abnormal test results and she made an appointment to see Bruce Bacon M.D. on August 2, 2007. (Tr. 235-36.)

On August 27, 2007, Liner visited Christine Jones, M.D., and reported that Alprazolam did not help her panic attacks. (Tr. 233.) Dr. Jones noted that Liner had full range of motion in all of her joints, appeared to move with normal fluid motion with no evidence of disability or limping. (Tr. 234.) Dr. Jones also noted that Liner was able to rise and sit without difficulty. (Tr. 234.) Liner received a prescription for Percocet and Alprazolam and referred to pain management. (Tr. 234.)

Ms. Wilkins, Dr. Bacon, and Adrian Di Bisceglie, M.D. signed a letter dated January 31, 2008 to Fran Handoyo, M.D. regarding Liner's treatment for Hepatitis C. The letter stated that Liner re-started her weekly treatment for her chronic Hepatitis C on December 14, 2007. (Tr. 352.) The letter also stated that since re-starting treatment Liner was "exhibiting a fair tolerance" of her medications, which included weekly and daily injections. (Tr. 352.)

On April 29, 2008, Dr. Bacon, Dr. Di Bisceglie, and Ms. Wilkins updated Dr. Handoyo regarding Liner's Hepatitis C treatment. (Tr. 349.) The letter noted that Liner had completed 21 weeks of treatment and Liner's HCV RNA[1] was detectable in laboratory results at 15,000 IU per milliliter. (Tr. 349.) The letter also noted that Liner was referred for a colonoscopy. (Tr. 349.)

In a letter dated June 8, 2008, Dr. Bacon, Dr. Di Bisceglie, and Ms. Wilkins updated Dr. Handoyo regarding Liner's Hepatitis C treatment. (Tr. 346.) The letter noted that Liner had completed 27 weeks of treatment. (Tr. 346.) The letter also noted that Liner's HCV RNA was "undetected by a qualitative laboratory method." (Tr. 346.)

On August 25, 2008, Liner visited the emergency room at St. Joseph Health Center Wentzville complaining of abdominal pain. (Tr. 277-336.) A CT scan of her abdomen showed a normal appendix and no evidence of pancreatitis (Tr. 294.) The discharge summary indicated that Liner was admitted in acute withdrawal of opiates (Percocet), she was stabilized, and her condition had improved at discharge. (Tr. 297.)

On September 24, 2008, Liner was transported to the emergency room at St. Joseph Hospital of Kirkwood for abdominal pain. (Tr. 372-383.) Jennifer Hester, M.D., noted that no cause for Liner's pain was found on the laboratory results or CAT scan. (Tr. 375.) Dr. Hester consulted with Dr. Bacon who suggested Liner's pain may be due to swelling of the capsule around her liver. (Tr. 375.) Dr. Bacon advised that it was safe to give Liner Vicodin for pain with instructions to follow up with him after discharge. (Tr. 375-76.)

On October 13, 2008, Barbara Edelman, MSW, completed an initial assessment for Liner. (Tr. 385-389.) Liner reported that she wanted to seek treatment for depression and anxiety. (Tr. 385.) Liner also reported that she had her own business selling insurance with an income over $50,000 per year, but she was financially "stressed out." (Tr. 386.) Liner stated

---

[1] HCV RNA is the amount of Hepatitis C virus that is detectable in a given volume of blood.

6

that she was also currently receiving social security income ("SSI") benefits in the amount of $771.00 per month. (Tr. 386.) Liner stated that she was currently not working on her business. (Tr. 386.) Liner also reported that she was currently receiving treatment for Hepatitis C, which she stated caused a lot of pain. (Tr. 386.) Ms. Edelman diagnosed Liner with obsessive compulsive disorder and depression. (Tr. 388.) Liner and Ms. Edelman formulated a treatment plan that included the following short-term goals: (1) assessment of nature, history, and severity of obsessive compulsive behavior; (2) take medication as prescribed; (3) implement relaxation methods to reduce tension; (4) identify conflicts that raise anxiety; (5) verbally identify source of depressed mood, and (6) express feelings of hurt, disappointment, shame and anger associated with early life experiences. (Tr. 388-89.)

Liner met with Ms. Edelman three times after the initial assessment. (Tr. 390.) On October 27, 2008, Liner reported to Ms. Edelman that she was not doing well and was depressed. (Tr. 390.) Ms. Edelman noted there was some progress made during the session. (Tr. 390.) On November 3, 2008, Liner reported to Ms. Edelman that she had been very depressed and has been unable to get out of bed and get dressed. (Tr. 390.) Liner's treatment plan was continued. (Tr. 390.) On November 13, 2008, Liner reported to Ms. Edelman that she was not feeling well and depressed. (Tr. 391.) Liner's treatment plan was continued. (Tr. 391.) Liner cancelled the remainder of her appointments with Ms. Edelman. (Tr. 391-92)

## 2. Liner's Social Security Records

On May 21, 2007, Liner contacted the Cape Girardeau Disability Determination Services ("DDS") to report that she had not been receiving correspondence, because DDS did not have her correct address. (Tr. 202.) Liner stated that she was not working as of May 2007, because she receives housing from HUD and "they" were raising her rent based on her salary. (Tr. 202.)

7

Liner stated she was "quitting work so that her rent does not get raised." (Tr. 202.) Liner also reported that she calls and gets appointments for insurance brokers and that her pay varies from month to month. (Tr. 202.)

In the work activity report submitted to the SSA, Liner indicated that she began working for Pisa Group for twenty-five hours per week as a telemarketer on July 1, 2007. (Tr. 160.) Liner also reported that she was self-employed for 30 hours per week in insurance outsourcing services and schedules appointments for insurance brokers. (Tr. 138, 160.) Liner reported that she needed to file taxes regarding her self-employment and she may have earned $3,000.00 in 2006. Liner also reported that her business was "on hold for right now." (Tr. 163.)

### 3. Additional Evidence Submitted to the Appeals Council[2]

Liner submitted two letters from Ms. Wilkins as additional evidence to the Appeals Council. (Tr. 15-18.) In a letter dated November 16, 2007, Wilkins states that Liner "has a chronic medical condition which has been causing her problems with her memory/concentration and fatigue" and therefore Liner withdrew from classes she was taking at Jefferson College. (Tr. 17.) In a letter dated November 6, 2009, Ms. Wilkins states that Liner has been a patient at St. Louis University Liver Center for her chronic hepatitis C since December 2000. (Tr. 18.) Ms. Wilkins notes that Liner has been treated several times and the treatments have been

---

[2] "In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999). In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* (citing *Riley*, 18 F.3d at 622). Thus, the appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole supports the decision made by the ALJ. *Perks v. Astrue*, No. 11-3041, 2012 WL 3168495, at *5 (8th Cir. Aug. 7, 2012) (citing *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)).

unsuccessful in eradicating the hepatitis C virus. (Tr. 18.) Ms. Wilkins also notes that Liner will have to be monitored for her liver disease every six months with laboratory tests and office visits. (Tr. 18.) Finally, Ms. Wilkins notes that Liner "has other health conditions that also require office visits and medications related to her mental health." (Tr. 18.)

### III. ALJ's Decision

The ALJ found that at the time of Plaintiff's most recent favorable determination, dated August 25, 2003, the comparison point decision, SSA considered Plaintiff incapable of sustaining even sedentary work activity due to side effects from Hepatitis C treatment. (Tr. 28-29). The ALJ also found that Plaintiff has not engaged in substantial gainful activity since January 1, 2007 and that Plaintiff's condition has not met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix. 1 since June 2007. (Tr. 29). The ALJ determined that Plaintiff's condition had medically improved since prior to July 1, 2007 and the medical improvement was related to Plaintiff's ability to work. (Tr. 29). The ALJ found that the Plaintiff's Hepatitis C remained severe since June 2007. (Tr. 29-30). The ALJ also determined that since July 1, 2007, Plaintiff has had the residual functional capacity ("RFC") to (1) lift or carry twenty pounds occasionally and ten pounds frequently; (2) sit six hours in an eight hour day; and (3) stand and/or walk a total of six hours in an eight hour workday. (Tr. 30). The ALJ determined that Plaintiff has been able to perform her past relevant work as a telemarketer since July 1, 2007. (Tr. 30-31). Based on the foregoing, the ALJ concluded that Plaintiff has not been disabled under the Act since July 1, 2007.

### IV. Legal Standards

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th

9

Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987)). The factual findings of the ALJ are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (*citing McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;

> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989).  Additionally, an ALJ's decision must comply "with the relevant legal requirements."  *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The continuing disability review process is governed by a sequential analysis contained in 20 C.F.R. § 404.1594(f).

> The regulations provide that determining whether a claimant's disability has ceased may involve up to eight steps in which the Commissioner must determine the following: (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

*Dixon v. Barnhart*, 324 F.3d 997, 1000-01 (8th Cir. 2003).  "When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where he is able to perform substantial gainful activity."  *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008) (*citing* 42

11

U.S.C. § 423(f)). "The medical improvement standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Delph*, 538 F.3d at 945.

## V.   Discussion

While not clearly stated, but it appears that Plaintiff alleges the following two points of error with the ALJ's decision: (1) the ALJ's residual functional capacity determination is not substantiated by any of the medical records and (2) the ALJ's assessment of Plaintiff's credibility contained factual inaccuracies and misstatements regarding Plaintiff's earnings history and work.

### A.   Residual Functional Capacity

Plaintiff asserts that the RFC determination by the ALJ is not supported by substantial evidence in the record. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

12

RFC). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004.)

### 1. Medical Improvement

First, Liner asserts that the ALJ and Drs. Diemer and Zoffuto erroneously "appear to state Liner has no further physical disability" and that she was "cured." Liner maintains that she is still infected with Hepatitis and still suffers side effects from it. Liner also contends that her health conditions require office visits and medication. Liner further asserts that because her mental impairment was considered a secondary impairment during the initial award of benefits, any improvement in her psychiatric condition should not be the sole source of the removal from disability benefits. (Pl's. Br. 6.) The ALJ addressed Liner's Hepatitis C diagnosis when determining whether she had medically improved related to her ability to work. (Tr. 29.) Liner's assertions that the ALJ and the consulting physicians considered her "cured" and thereby denied her claim lack merit. The social security regulations define medical improvement as:

> [A]ny decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1). Liner was initially found disabled due to the side effects for her treatment for Hepatitis C and degenerative disc disease ("DDD"). (Tr. 33.) In the Physical RFC assessment, Drs. Diemer and Zoffuto stated that Liner's medical condition had improved, because Liner was not receiving any treatment for the DDD or the hepatitis C. (Tr. 188.) In his decision, the ALJ noted that Liner had not received treatment for the hepatitis C between 2003

and 2007 and that the virus was no longer detectable. (Tr. 29-30.) The ALJ's decision notes that Liner's medical evidence was unremarkable since the award of disability benefits. (Tr. 30.) The ALJ also noted that Dr. Bacon reported that Liner exhibited a fair tolerance for her medications. (Tr. 29.) Further, the medical records show that Liner sought mental health treatment only twice with Ms. Edelman. (Tr. 385-89.) It is undisputed that Liner still has Hepatitis C and that she has been diagnosed with depression since she was initially awarded disability benefits. The ALJ's decision does not dispute that Liner is still infected with Hepatitis or that she does not suffer from depression, however, the presence of a medical disability or the requirement for treatment for a disability alone does not make a person disabled. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) ("That a claimant has medically-documented impairments does not perforce result in a finding of disability.") Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

The ALJ must compare Liner's current condition with the condition existing at the time Liner was awarded benefits. In this case, the medical evidence clearly shows that Liner's condition had improved to the point that treatment for the Hepatitis and DDD was not necessary for several years. Liner also reported that she began working in 2004. Further, there is no medical evidence in the record that any of Liner's doctors limited Liner's activities, precluded her from working, or found her to be disabled. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (1993) (lack of any significant restrictions on activities by doctors inconsistent with claims of pain).

Liner asserts that no functional capacity report was done on Liner and the ALJ determined her working capacity "off of individual medical reports without taking a look at her condition as a whole." (Pl.'s Br. 3.) The administrative record contained two functional capacity assessments completed by state agency medical consultants. (Tr. 186-90, 191-201). Administrative law judges must consider findings and other opinions of state agency medical and psychological consultants as opinion evidence, except regarding the ultimate determination about whether the claimant is disabled. *See* 20 C.F.R. §404.1527(e)(2)(i). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

The ALJ examined treatment records from Liner's treating physicians and the state agency doctors to determine Liner's RFC. (Tr. 29.) The ALJ's RFC assessment is consistent with the opinions of the agency doctors. The ALJ noted that Liner's treating sources show that Liner was diagnosed with depression and/or anxiety disorder, but that post-June 2007, Liner has only seen a social worker twice.[3] (Tr. 29.) The ALJ also noted that Liner did not receive any psychotropic medication until October 2008 and that Liner's psychiatric evaluations performed in late 2008 and early 2009 had normal results. (Tr. 30.)

Liner refers to two letters from Ms. Wilkins penned in 2007 and 2009 and a letter from Dr. Bacon dated February 17, 2012 to contradict the ALJ's RFC. (Tr. 17, 18, Doc. 17-1.) The letters Ms. Wilkins penned were submitted to the Appeals Council after the ALJ's decision so the Court will consider how the ALJ would have weighed this evidence had it existed at the time

---

[3] The administrative record shows that Liner met with Ms. Edelman three times not twice. (Tr. 390-92.)

15

of his decision. *See Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000). The Court finds that the ALJ would not have considered Ms. Wilkins' letters substantial evidence. The November 16, 2007 letter does not identify the "chronic medical condition" that it references and only notes that Liner's symptoms from the unidentified condition made it difficult to continue her education at Jefferson College. (Tr. 17.) The letter dated November 6, 2009, also fails to provide any evidence that would help assess Liner's functional capacity for work. (Tr. 18.) The November 6th letter states that Liner had been treated for chronic hepatitis C off and on since December 2000. (Tr. 18.) It also lists the side effects from the treatments and that Liner's "other medical conditions" (unidentified) also require office visits and medication. (Tr. 18.) Wilkins opines that Liner's chronic fatigue, joint pain, and difficulty concentrating affect her ability to work. (Tr. 18.) The letter, however, does not include any descriptions regarding how it affects Liner's ability to work, identify any physical or mental restrictions, and does not state whether Liner is precluded from working. (Tr. 18.) *See* 20 C.F.R. § 404.1527(a)(2) (Medical opinions are statements from physicians, psychologist and other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and any physical and mental restrictions). The letters as written do not contradict the agency's functional assessments, because they do not even identify what Liner can do despite her impairment or identify any physical or mental restrictions. Accordingly, the Court finds that Wilkins' letters do not constitute substantial evidence.

The letter from Dr. Bacon dated February 17, 2012 is not a part of the administrative record. The February 17th letter was submitted as an exhibit to Plaintiff's Brief in Support of Complaint. "Section 405(g) generally precludes consideration on review of evidence outside the

16

record before the Commissioner during the administrative proceedings." *Jetton v. Astrue*, No. 4:06-CV-910 CAS DDN, at *4 (E.D. Mo. Aug. 7, 2007) (citing *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir.1997)).  "Remand for consideration of new evidence is only appropriate when plaintiff shows that the new evidence ... is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*  "To be considered material, the new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." *Jones*, 122 F.3d at 1154.  First, the Court notes that Liner has not attempted to show why the letter from Dr. Bacon is material and why good cause exits for the failure to incorporate it into the record when the case was pending before the Commissioner.  Dr. Bacon's letter is introduced more than two years after the ALJ's decision and almost a year after the Notice of the Appeals Council Action.  (Tr. 2-4.)  Dr. Bacon is Liner's primary treating physician for her hepatitis C and there is absolutely no evidence in the record as to why Dr. Bacon's letter could not have been submitted over two years ago.  Moreover, Dr. Bacon's letter gives a history of Liner's treatment and then focuses on her current condition.  As stated above, the new evidence must be probative of Liner's condition during the time period for which benefits were denied.  Accordingly, the Court will not consider Dr. Bacon's letter as new evidence.  The Court finds that based on all of the evidence in the record, the ALJ's RFC assessment is based on substantial evidence.

## 2. Plaintiff's Credibility[4]

Second, Liner asserts that the ALJ's assessment of her credibility was based on "false" and "misleading" statements regarding Liner's work. (Pl.'s Br. 2.) The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guillams*, 393 F.3d at 802; *Masterson*, 363 F.3d at 738. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio*, 862 F.2d at 179; *Millbrook*, 780 F.2d at 1374. "Where adequately explained and supported, credibility findings are for the ALJ to make." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

The Eighth Circuit has consistently held that, in assessing a claimant's credibility, the ALJ must consider the *Polaski* factors, which include: (1) claimant's daily activities; (2) the duration; frequency, and intensity of pain; (3) precipitating and aggravating factors, (4) the dosage, effectiveness, and side effects of medication; (5) functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (citing *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). The ALJ, however, "need not explicitly discuss

---

[4] Liner asserts that her earnings between 2003 and 2008 do not rise to the level of substantial gainful activity as she works from home on a limited basis in work, "which is among the least strenuous jobs, only requiring sedentary exertional capacity." (Pl.'s Br. 3). In his opinion, the ALJ assumed that Liner did not engage in substantial gainful activity, because there was "lack of solid evidence on the matter." (Tr. 29.) The ALJ noted that at the time of the ALJ's decision, Liner was still working as a self-employed insurance sales agent and that Liner denied knowing how much she had earned from the job when questioned by the SSA. (Tr. 209-10.) The ALJ also noted that Liner told Ms. Edelman that she earned more than $50,000 per year at her job. (Tr. 29.) Liner does not deny that she told Ms. Edelman that she earned over $50,000 per year, but states "this has to be taken as a statement of wishful thinking and not of fact." (Pl.'s Br. 4.)[4] Because the ALJ assumed Liner did not engage in substantial gainful employment due to lack of evidence, Liner cannot show how this finding negatively impacts her credibility.

18

each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (citation omitted). "It is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints. *Id.* (citation omitted).

In this case, the ALJ found that Liner lacked credibility for several reasons. First, the ALJ determined that that no doctor had rendered a medical opinion that Liner was unable to perform any type of work or imposed any restrictions on her activities. (Tr. 31.) *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (lack of restrictions by treating physician supports ALJ determination that plaintiff was not disabled). In her statement to the DDS, Liner claimed that she stopped working in May 2007 so that she could continue to receive rental assistance from HUD. (Tr. 202). It is also relevant to credibility where a claimant leaves work for reasons other than her medical condition. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (relevant that claimant lost job for slapping patient and not medical condition). In fact, Liner indicated she could work with restrictions.[5] (Tr. 219.) The ALJ also determined that Liner's self-employment shows an ability to work. *Id.* at 792 (working generally demonstrates an ability to perform a substantial gainful activity). Finally, the ALJ noted that Liner did not contribute any of her self-employment earnings to the Social Security Trust Fund. Liner contends that her accountant handles all of her tax payments and he has assured her that "all proper withholdings have been made." (Pl.'s Br. 4.) There are sufficient unexplained inconsistencies in the record for the ALJ to discount Liner's credibility. Based on the foregoing, the Court finds that the ALJ's credibility findings are supported by substantial evidence.

## VI. Conclusion

In summary, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

---

[5] Liner has not identified what restrictions would allow her to work.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Claimant in her Complaint and Brief in Support of Complaint is **DENIED** and that judgment is entered in favor of Defendant. [Docs. 1, 15]

Dated this 25th day of September, 2012.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE